IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON JABARA, | : |
| Plaintiff, | : |
| v. | : 3:13-CV-02041 |
| | : (JUDGE MARIANI) |
| AETNA LIFE INSURANCE CO., | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is "Plaintiff's motion to determine the appropriate standard of review" (Doc. 17) in this Employee Retirement Income Security Act ("ERISA") action for long-term disability benefits. (*See* Compl., Doc. 1, at ¶¶ 4-5). Plaintiff Jason Jabara has filed briefs in support of his motion (Docs. 18, 28), Defendant Aetna Life Insurance Company ("Aetna") has filed a brief opposing the motion (Doc. 22), and the matter is ripe for disposition.

### II. Background

The Complaint alleges Plaintiff had long-term disability insurance through his employment at the Tobyhanna Army Depot. (Doc. 1 at ¶ 3). Aetna administered his policy. (*Id.*). Jabara received benefits under the policy between February 2, 2011 and February 2, 2013. (*Id.* at ¶ 6). On February 2, 2013, Aetna terminated Jabara's benefits due to an alleged lack of medical evidence. (*Id.*). Plaintiff filed an administrative appeal and allegedly

provided Aetna with "extensive medical evidence of his disability." (*See id.* at ¶¶ 8-9). On May 24, 2013, Aetna sent Plaintiff a letter indicating it would not reinstate his benefits. (*Id.* at ¶ 9).

Jabara then filed the instant action seeking reinstatement of his long-term disability benefits pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B). (*Id.* at ¶¶ 5, 9). In his motion, Jabara asks the Court to determine the appropriate standard of review. (Doc. 17). Aetna asserts that its denial of Jabara's benefits is subject to review under an arbitrary and capricious standard.[1] (*Id.* at ¶ 5). Plaintiff submits that *de novo* review should apply. (*Id.*).

The parties have included for the Court's review the "Group Life and Accident and Health Insurance Policy" ("Group Insurance Policy") and a "Booklet-Certificate" (collectively the "Plan").[2] The "Booklet-Certificate is part of the Group Insurance Policy between Aetna Life Insurance Company and the Policyholder." (Plan at 1). As discussed below, the Booklet-Certificate "is the Summary Plan Description ['SPD'] required by ERISA." (*Id.* at 29). The Booklet-Certificate indicates that Defense Support Services LLC is the Group Policyholder and Plan Administrator. (*Id.* at 3, 29). It further states, "The Group Insurance Policy determines the terms and conditions of coverage." (*Id.* at 3).

Under the "General Provisions" section, the Group Insurance Policy states:

---

[1] "In the ERISA context, an 'abuse of discretion' standard of review is used interchangeably with an 'arbitrary and capricious' standard of review." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 n.4. (3d Cir. 2011) (citing *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n. 6 (3d Cir. 2010)).

[2] The parties attach these documents, which are paginated AETNA 000001 to 000080. (*See* Pl.'s Ex. A, Doc. 17-4; Def.'s Exs. A & B, Docs. 22-2 & 22-3). The Court shall refer to these documents in combination as ("Plan at X") using these page numbers.

2

> **Claim Determinations; ERISA Claim Fiduciary.** For the purpose of section 503 of . . . (ERISA), [Aetna is] a fiduciary with complete authority to review all denied claims for benefits under this Policy. This includes, but is not limited to, the denial of certification of the medical necessity of hospital or medical treatment. In exercising such fiduciary responsibility, [Aetna] shall have discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms under this Policy, the Certificate or any other document incorporated herein. [Aetna has] the right to adopt reasonable policies, procedures, rules, and interpretations of this Policy to promote orderly and efficient administration.

(Plan at 73 (emphasis omitted)).

### III. Analysis

"The Supreme Court has held that 'a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Viera*, 642 F.3d at 413 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) (alteration in *Viera*)). "If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations," courts "review its decisions under an abuse-of-discretion (or arbitrary and capricious) standard." *Id.* "'Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan.'" *Id.* (quoting *Luby v. Teamsters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991)). Discretionary power can be granted expressly or impliedly, and "[t]here are no 'magic words' determining the scope of judicial review[.]" *Id.* If the plan is ambiguous, it will be construed in favor of the insured. *Id.* "'The

3

plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies.'" *Id.* (quoting *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999)).

Here, the terms of the Plan grant Aetna discretionary authority to determine an employee's or an employee's beneficiary's entitlement to benefits. The Plan provides that Aetna is "a fiduciary with complete authority to review all denied claims for benefits under this Policy." (Plan at 73). It also states, "In exercising such fiduciary responsibility, [Aetna] shall have discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms under this Policy, the Certificate or any other document incorporated herein." (*Id.*). Therefore, the Plan "gives [Aetna] discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *See Viera*, 642 F.3d at 413 (quoting *Firestone Tire*, 489 U.S. at 115).

This conclusion is supported by a recent Third Circuit decision which determined that the exact language at issue here granted Aetna discretionary authority. *Osborne v. Aetna*, 2013 WL 3168657, at *6 (D.N.J. 2013). Further, the Court of Appeals has held that a similar policy, which vests the administrator with

> "[f]ull and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve any questions arising in the administration, interpretation, and application of the Group Policy[,]" . . . clearly triggers application of the deferential abuse of discretion standard of review.

*Fleisher v. Standard Ins. Co.*, 679F.3d 116, 121 (3d Cir. 2012) (internal citations omitted).

Finally, this Court has held that similar policy language granted discretionary authority with respect to the determination of eligibility for benefits under an employee benefit plan. *See, e.g., Cipriani v. Liberty Life Assur. Co. of Boston*, 2014 WL 2115121, at *2 (M.D. Pa. 2014) (involving a policy stating that "Liberty[, the plan administrator, shall] possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding."); *Liberatore v. Prudential Ins. Co. of Am.*, 2014 WL 1235789, at *2 n.2 (M.D. Pa. 2014) (involving a policy stating, "The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.").

Despite this precedent and the plain language of the Group Insurance Policy, Jabara advances several arguments suggesting that the Plan does not clearly convey discretionary authority to Aetna. (*See* Pl.'s Br. in Supp., Doc. 18, at 5-9; Pl.'s Reply Br., Doc. 28, at 3-8). Jabara's arguments rest primarily on the Third Circuit's decision in *Viera*, 642 F.3d 407. However, the case at bar is distinguishable from *Viera*. In *Viera*, the contested language involved a "Proof of Loss" provision, which stated: "Written or authorized electronic proof of loss satisfactory to Us must be given to Us at Our office, within 90 days of the loss for which

5

claim is made." *Id.* at 414. The Court of Appeals confronted a split among the Circuits regarding "satisfactory to us" language. *Id.* at 416. Ultimately, the Third Circuit determined that the provision was ambiguous and, therefore, did not insulate the administrator from *de novo* review. *Id.* at 417.

Here, in contrast, the Plan does not include ambiguous "satisfactory to us" language. Instead, it clearly grants Aetna "with complete authority to review all denied claims for benefits under this Policy" and states that Aetna "shall have discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms under this Policy, the Certificate or any other document incorporated herein." (Plan at 73).

Jabara also attempts to use *Viera* to distinguish *Osborne*, 2013 WL 3168657, which found the exact language at issue here conveyed discretionary authority. (Reply Br. at 7). Plaintiff notes that *Osborne* preceded *Viera* and goes on to argue,

> In *Osborne*, the case was before the court on a motion for summary judgment contending improperly denied STD benefits. There, no one raised and the court did not review and consider *Viera*. Nor, was the purported language challenged as ambiguous or unclear.

(*Id.*).

Despite these assertions, Jabara does not explain how any of these distinctions amount to a legal difference that could form the basis for this Court to distinguish *Osborne*. Nor does he argue that *Osborne* was mistaken in finding that the Group Insurance Policy language conferred discretionary authority to Aetna.

6

Second, Jabara argues that Aetna does not have discretionary authority since it has a fiduciary duty to operate in Plaintiff's interest. (Br. in Supp. at 8). According to Plaintiff, Aetna's fiduciary duty indicates that *de novo* review ought to apply. Plaintiff points to a passage of the Booklet-Certificate that states, "The people who operate your Plan, called 'fiduciaries' of the Plan, have a duty to do so prudently and in your interest and that of other plan participants and beneficiaries." (Plan at 30). This language tracks the ERISA statute, which "provides that fiduciaries shall discharge their duties with respect to a plan 'solely in the interest of the participants and beneficiaries[.]'" *Pegram v. Herdrich*, 530 U.S. 211, 223-24, 120 S. Ct. 2143, 2151, 147 L. Ed. 2d (2000) (quoting 29 U.S.C § 1104(a)(1)); *see also Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013) *cert. denied*, 134 S. Ct. 2291, 189 L. Ed. 2d 173 (2014) ("ERISA requires that a fiduciary 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries.'" (quoting 29 U.S.C § 1104(a)(1)).

ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he *exercises any discretionary authority or discretionary control respecting management of such plan* or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he *has any discretionary authority or discretionary responsibility in the administration of such plan.*

29 U.S.C § 1002(21)(A) (emphasis added).

Thus, having the status of a fiduciary carries with such status discretionary authority and, here, the Group Insurance Policy unambiguously confers on Aetna the discretionary authority to determine eligibility for benefits under the Plan (Plan at 73) in question.

Third, Jabara argues that the Booklet-Certificate conflicts with the Group Insurance Policy, because although the Group Insurance Policy purports to confer discretionary authority to Aetna, the Booklet-Certificate fails to indicate such a grant. (Reply Br. at 5-6). The Booklet-Certificate is the Plan's SPD required by ERISA. (Plan at 29). The purpose of an SPD is to "summarize and not parrot the terms of the Plan as parroting would defeat the purpose of the SPD." *Araujo v. Kraft Foods Global, Inc.*, 387 F. App'x 212, 218 (3d Cir. 2010). ERISA requires that the SPD be "sufficiently accurate and comprehensive to reasonably apprise . . . participants . . . of their rights and obligations" under an employee benefit plan in a manner "calculated to be understood by the average plan participant[.]" 29 U.S.C. § 1022(a).

Where an employee benefit plan "provides the contractual terms of the plan, and to the extent that it is consistent with the SPD, the [employee benefit plan] clearly controls." *See Nash v. Mercedes Benz USA*, 489 F. Supp. 2d 411, 415 (D.N.J. 2007). If, however, the SPD conflicts with the language of an employee benefit plan, "it is the summary plan description that will control." *Id.* (quoting *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 378 (3d Cir. 2003)). A "conflict is not necessarily created when an SPD is silent or fails to include certain terms of a plan."

8

*Araujo*, 387 F. App'x at 217 (3d Cir. 2010) (citing *Nash*, 489 F. Supp. 2d at 416). "[W]here the [employee benefit plan] contains language granting discretionary authority, silence in the summary plan description regarding the grant of discretion is not a conflict[.]" *See Nash*, 489 F. Supp. 2d at 417 (collecting cases) (citing, *inter alia*, *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 489 (2d Cir. 2006)).

Here, Jabara asserts that a conflict exists between the Group Insurance Policy and the Booklet-Certificate because the former purports to grant discretionary authority while the latter is silent. (Reply Br. at 5-6). Jabara's argument has no merit. The fact that the Booklet-Certificate does not repeat the grant of discretionary authority contained in the Group Insurance Policy does not create a conflict. *See Nash*, 489 F. Supp. 2d at 417. Because no conflict exists, the language of the Group Insurance Policy governs, and arbitrary and capricious review applies. *See id.* at 415.

Finally, Jabara argues that a conflict exists because the Booklet-Certificate indicates that Defense Support Services LLC is the Plan Administrator and has discretion to amend the plan, while the Group Insurance Policy states that Aetna has discretionary authority to administer claims. (*See* Br. in Supp. at 5). However, Jabara fails to explain how this arrangement represents a conflict which would affect this Court's determination of the applicable standard of review.

ERISA explicitly permits the delegation of fiduciary duties among named fiduciaries. 29 U.S.C. § 1105(c)(1)(A); *see also Chevron Chemical Co. v. Oil, Chemical & Atomic*

*Workers*, 47 F.3d 139, 142 (5th Cir. 1995); *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 584 (1st Cir. 1993); *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1283-84 (9th Cir. 1990), *cert. denied*, 498 U.S. 1087, 111 S. Ct. 964, 112 L. Ed. 2d 1051 (1991). 29 U.S.C. § 1105(c)(1)(A) provides, "The instrument under which a plan is maintained may expressly provide for procedures . . . for allocating fiduciary responsibilities . . . among named fiduciaries . . . under the plan." "[T]he term "named fiduciary" means a fiduciary who is named in the plan instrument[.]" 29 U.S.C. § 1102(a)(2). Here, both Aetna and Defense Support Services LLC are named in the Plan and are, therefore, named fiduciaries. (Plan at 29, 73). Thus, the fact that Defense Support Services LLC has authority to amend the Plan does not diminish or conflict with the discretionary authority granted to Aetna.

In sum, Jabara's arguments do not alter the plain language of the Plan, which grants Aetna discretionary authority and requires arbitrary and capricious review.

## IV. Conclusion

For the foregoing reasons, arbitrary and capricious review applies to Jabara's claim. A separate Order follows.

_____
Robert D. Mariani
United States District Judge